NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4695

_____

LETICIA WILSON, Appellant

v.

VIRGIN ISLANDS WATER AND POWER AUTHORITY

_____

APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS,
DIVISION OF ST. CROIX
(D.C. Civ. No. 1-07-cv-00024)
District Judge: Honorable Raymond L. Finch

_____

Argued December 6, 2011

_____

Before: FISHER, GREENAWAY, JR., and ROTH, *Circuit Judges*.

_____

(Opinion Filed: March 8, 2012)

_____

E. Geoffrey Wolfe (argued)
Lee J. Rohn
Law Offices of Rohn and Carpenter, LLC
1101 King Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
    *Counsel for Appellant*

1

Gina Dyer-Cintron (argued)
V.I. Water and Power Authority (STX)
P.O. Box 1009
Christiansted, Virgin Islands 00820

Lorelei Farrington
Virgin Islands Water and Power Authority
P.O. Box 1450
St. Thomas, Virgin Islands 00804
        *Counsel for Appellee*

———————————

OPINION

———————————

GREENAWAY, JR., *Circuit Judge*.

Leticia Wilson ("Wilson") brought this lawsuit against her former employer, the Virgin Islands Water and Power Authority ("WAPA"), asserting various claims stemming from her termination. Wilson asserts that her termination came about after she informed WAPA that she was pregnant and, later, that she would need to be on bed rest for several months. Wilson's initial complaint brought statutory claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act ("FMLA"), the Virgin Islands Civil Rights Act ("VICRA"), the Virgin Islands Discrimination in Employment Act ("VIDEA"), and the Virgin Islands Wrongful Discharge Act. She also brought common law claims for defamation, breach of contract, breach of covenant of good faith and fair dealing, and intentional infliction of emotional distress.[1]

———————————

[1] Wilson dropped her Title VII and Wrongful Discharge Act claims from her First Amended Complaint.

2

The District Court dismissed the VICRA and VIDEA claims on the ground that those statutes did not create a private right of action. It also found that the complaint did not state a claim for the intentional infliction of emotional distress and dismissed that claim. Subsequently, it granted summary judgment in favor of WAPA on the remaining claims. Wilson timely appealed from these orders.

Full-time enrollment at the University of the Virgin Islands was a requirement of Wilson's job and WAPA terminated her for failure to maintain full-time enrollment. Accordingly, summary judgment was proper. We will affirm the orders of the District Court.

## I. BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Wilson began working for WAPA in February 2003. According to the "Notice of Personnel Action" form with which she was hired, her title was "Clerk III," and she was required to "maintain student status at the University of the V.I." (App. 854.) WAPA regularly employed University of the Virgin Islands ("UVI") students in this temporary position. It did not provide them with leave or other benefits. The title "Clerk III" appears to have been used interchangeably with "clerk dispatcher" to describe the position.

In March 2005, Wilson informed her supervisor, Jasmine Hanley ("Hanley"), that she was pregnant. The other employee holding the position of student Clerk III informed

3

WAPA that she was pregnant at around the same time. Thereafter, Hanley repeatedly made comments and jokes about how everyone in the office was pregnant. WAPA posted the availability of two temporary student clerk-dispatcher positions with an application deadline of May 31, 2005. It has offered no explanation for the timing of the posting of these openings, as there were only two student clerk-dispatcher positions in total and neither pregnant clerk-dispatcher had informed WAPA that she planned to quit her job. That spring, Wilson applied for a permanent clerk-dispatcher position for which she was neither interviewed nor hired.

In June 2005 and then again in July 2005, Wilson received letters from the WAPA Human Resources Department informing her that she was required to submit documentation proving that she had been a full-time student at UVI during the fall 2004 and spring 2005 semesters. Before the first of these letters was sent, Wilson had indisputably already submitted such documentation regarding the spring 2005 semester. The record is unclear as to whether documentation regarding the fall 2004 semester was also contained in her personnel file at that time.

On July 22, 2005, Wilson provided WAPA with a doctor's note stating that she needed to be on bed rest until September 12, 2005, her expected date of delivery. Her last day of work at WAPA was July 23, 2005. As a temporary clerk dispatcher, Wilson was not entitled to paid leave. Nonetheless, WAPA did not inform her of her entitlement to FMLA leave, without pay, at the time she presented the doctor's note. Wilson did not return to work on September 12, 2005 or any date thereafter.

4

On August 26, 2005, Wilson filed a claim for unemployment benefits with the Virgin Islands Department of Labor ("VIDOL"). That same day,[2] VIDOL sent WAPA a letter enclosing Wilson's application for benefits, which listed her last day of work as July 23, 2005. As part of VIDOL's fact finding, Wilson wrote in a statement on September 5, 2005 that, while she was out on leave, she had received a phone call from her supervisor, informing her that she was searching for her replacement. The supervisor reportedly told Wilson that she was being replaced because she "was not returning back to work and school . . . until January." (*Id.* at 1017.) Wilson also wrote, "Although there was no written agreement, I was informed upon my hiring that I must maintain a status of a full time student at the University in order to maintain employment." (*Id.*) This statement appears to be a response to the interviewer's prompt: "Explain what your employer told you as reason for your termination from the job." (*Id.*) VIDOL found that Wilson qualified for unemployment benefits beginning August 21, 2005.

In its "Employer's Statement" to VIDOL, WAPA wrote that the "student-employee is required to be enrolled at UVI as a full-time student with a course load of at least twelve (12) credits." (*Id.* at 1019.) Wilson was terminated, according to this statement, when she "became pregnant and had a child and as a result was unable to fulfill the stated obligation." (*Id.*) WAPA later completed a Notice of Personnel Action form, dated October 21, 2005, indicating that Wilson had been terminated effective July

---

[2] WAPA's Human Resources Department stamped the letter when it was received, apparently on September 8, 2005.

24, 2005. As the reason for the termination, the form stated "Did not maintain full time status at UVI."[3] (*Id.* at 872.)

Wilson filed suit on March 2, 2007. She asserted claims under Title VII, the FMLA, VICRA, VIDEA, and the Virgin Islands Wrongful Discharge Act. She also brought common law claims for defamation, breach of contract, breach of covenant of good faith and fair dealing, and intentional infliction of emotional distress. In her First Amended Complaint, she withdrew her Title VII and Wrongful Discharge Act claims. WAPA moved to dismiss the FMLA, VICRA, and VIDEA claims, as well as the intentional infliction of emotional distress claim.

In an Order dated January 23, 2009, the District Court dismissed the VICRA and VIDEA claims on the ground that those statutes did not create a private right of action. It also found that the Amended Complaint did not state a claim for the intentional infliction of emotional distress and dismissed that claim. The District Court allowed the FMLA claim to proceed, declining to rely on evidence outside the complaint. Wilson moved for reconsideration of its ruling, and the District Court denied that motion.

Discovery in the case closed on July 31, 2009. At that time, Wilson believed that WAPA's discovery responses were deficient. Some communication between the parties

---

[3] The record is unclear as to the precise definition of full-time, and the term is undefined in WAPA job descriptions. Deposition testimony revealed uncertainty as to whether a student who began a semester with more than twelve credit hours would lose full-time status if she dropped courses or failed courses. On the other hand, deposition testimony was clear that full-time status did not require students to enroll in summer classes. (App. 329.)

related to that dispute continued and, on May 19, 2010, Wilson filed a motion to compel the disputed discovery. The Magistrate Judge denied this motion as untimely, and the District Judge affirmed that decision on December 3, 2010.

While that dispute was ongoing, WAPA filed a motion for summary judgment and then a motion to dismiss for lack of subject matter jurisdiction. In an Order dated December 7, 2010, the District Court granted summary judgment in favor of WAPA on all claims. The motion to dismiss alleged that Wilson had failed to comply with certain statutory prerequisites required before the Government of the Virgin Islands would be deemed to have waived sovereign immunity and that the District Court therefore lacked subject matter jurisdiction. The District Court denied that motion as it had recently determined that sovereign immunity did not apply to WAPA.

Wilson timely appealed from: (1) the District Court's grant of summary judgment; (2) the District Court's grant of the earlier motion to dismiss and the denial of reconsideration of that grant; and (3) the Magistrate Judge's order denying the motion to compel and the District Judge's order affirming that denial.

## II. **JURISDICTION AND STANDARD OF REVIEW**

The District Court had jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. We have jurisdiction over the appeal from the final orders of the District Court under 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of . . . the District Court of the Virgin Islands.").

7

We exercise plenary review over a district court's grant of a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010). We also exercise plenary review over a district court's grant of summary judgment. *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 216 (internal quotation marks omitted).

## III. ANALYSIS

We address Wilson's arguments in turn.

### a. VICRA/VIDEA

We begin with Wilson's contention that the District Court erred when it dismissed Wilson's claims under VICRA and VIDEA, finding that neither statute provided a private right of action for her claims. Count III of her First Amended Complaint alleged violations of Chapter 5 of VICRA, V.I. Code Ann. tit. 10, §§ 61 – 75 and of VIDEA, V.I. Code Ann. tit. 24, §§ 451 – 462.

This Court has held that a private right of action exists under Chapter 1 of VICRA, *Figueroa v. Buccaneer Hotel*, 188 F.3d 172, 178 (3d Cir. 1999), but Chapter 1 does not prohibit discrimination based on sex. Chapter 5, which creates the Virgin Islands Civil Rights Commission, prohibits discrimination based on race, color, religion, and national origin, as does Chapter 1, but it also prohibits discrimination based on age, sex, and

8

political affiliation. V.I. Code Ann. tit. 10, § 64. The District of the Virgin Islands has issued conflicting opinions on the question of whether a private right of action exists under Chapter 5. *Compare, e.g., Miller v. V.I. Hous. Auth.*, No. 1998/0089, 2005 WL 1353395, at *5 (D.V.I. June 3, 2005) (holding no implied private right of action in VICRA Chapter 5), *with Frorup-Alie v. V.I. Hous. Fin. Auth. (VIHA)*, No. 200-0086, 2003 WL 23515136, at *3-5 (D.V.I. Oct. 24, 2003) (finding private right of action in Chapter 5).

Section 451 of VIDEA makes it unlawful for "an employer to refuse to hire or employ or to bar or discharge from employment, any individual because of his race, sex, age, religion, color or ancestry." V.I. Code. Ann. tit 24, § 451(a)(1). It also prohibits discrimination in the terms of employment on those bases. § 451(a)(2). Sex-based discrimination is defined to include discrimination "because of or as to pregnancy, childbirth, or related medical conditions." § 451(b)(2). Several decisions of the District of the Virgin Islands have held that there is no private right of action under VIDEA § 451. *Miller*, 2005 WL 1353395, at *5; *Frorup-Alie*, 2003 WL 23515136, at *2. None appears to have found a private right of action.

Here, the District Court, applying our decision in *Wisniewski v. Rodale, Inc.*, 510 F.3d 294 (3d Cir. 2007), held that no private right of action existed for Wilson under either VICRA or VIDEA. Wilson contends that this decision was in error. We need not answer this question. Assuming, arguendo, that a private right of action exists under both statutes, summary judgment would nonetheless have been appropriate. Maintaining full-

9

time student status was a requirement of Wilson's position, one which she acknowledges she was aware of from the time of her hiring. (App. 329, 393, 1017, 1028). From the initial VIDOL investigation until the present, WAPA has consistently asserted that Wilson was terminated because she would not be enrolled in school full time. No genuine dispute remains on this question. Under these circumstances, even if VICRA and the VIDEA provided Wilson with causes of action, she could not prevail. Accordingly, summary judgment was proper.

### b. FMLA

Wilson claims that the District Court erred in granting summary judgment to WAPA on her FMLA claim. Her complaint alleged that she "was never informed of her rights under FMLA or allowed to take leave." (App. 72, ¶ 27.)

The FMLA exists in order to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons, [including] for the birth or adoption of a child." 29 U.S.C. § 2601(b)(1),(2). It also aims to "minimize[] the potential for employment discrimination on the basis of sex by ensuring generally that leave is available . . . on a gender-neutral basis." § 2601(b)(4). To that end, it requires that an eligible employee[4] receive twelve workweeks of leave during any twelve-month period because of the birth of a child or for several other family and medical reasons. § 2612(a)(1)(D). FMLA leave carries with it the right for the

---

[4] Appellees do not contest that Wilson is an eligible employee.

employee to be restored, at the end of the leave, to the position she held before or to an equivalent position. § 2614(a)(1). It does not "entitle a restored employee to a right, benefit or position to which the employee would not 'have been entitled had the employee not taken the leave.'" *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004) (quoting 29 U.S.C. § 2614(a)(3)(B)). Accordingly, "if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement." *Id.* (citing 29 C.F.R. § 825.216(a)(1)).

In order to prevail on a FMLA claim, an employee must demonstrate that he suffered prejudice as a result of the employer's violation of the statute. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Conoshenti*, 364 F.3d at 143. A claim based on the employer's failure to advise an employee of his FMLA rights will therefore constitute interference with FMLA rights under § 2615 if "he is able to establish that this failure to advise rendered him unable to exercise [the right to leave] in a meaningful way, thereby causing injury." *Id.*

The District Court here found that Wilson was entitled to FMLA leave. It also noted that "the record leaves in doubt" whether WAPA complied with the notice requirements of FMLA. (App. at 41.) Nonetheless, it found that Wilson "failed to establish the requisite harm arising out of the failure to inform because even if she had returned to work at the end of the twelve weeks, she would remain ineligible for employment based on her failure to maintain her status as a full-time UVI student." (*Id.* at 42.) For the reasons detailed above, we agree. Full-time student status was a

11

requirement of Wilson's position, and her failure to maintain that status made it impossible for her to prevail on the FMLA claim. Thus, summary judgment was appropriate.

Wilson argues secondarily that she suffered prejudice because she was entitled to benefits during the course of her leave, despite the fact that she had never been given benefits as a temporary employee. If WAPA was indeed required by law to provide Wilson with health care benefits, and it failed to so, the proper avenue for relief is a claim under ERISA. She failed to bring such a claim, and thus her argument attempts to fit a square peg into a round hole.

c. Good Faith and Fair Dealing

Wilson argues that the District Court erred when it granted summary judgment in favor of WAPA on the breach of duty of good faith and fair dealing claim. To state a claim for a breach of the duty of good faith and fair dealing in the Virgin Islands, a plaintiff must allege: "(1) that a contract existed between the parties, and (2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties." *LPP Mortg. Ltd. v. Prosper*, No. 2006-180, 2008 WL 5272723, at *2 (D.V.I. Dec. 17, 2008) (published opinion) (citations omitted). Even where an employee has no written employment contract, the duty exists. *Smith v. V.I. Water and Power Auth.*, No. 04-148, 2008 WL 5071685, at *8 (D.V.I. Nov. 24, 2008). Summary judgment on such a claim is inappropriate where there is a material

dispute as to whether an employer acted with fraud and deceit in forcing the termination of a medically disabled employee. *See Hodge v. Daily News Publ'g Co., Inc.*, No. ST-00-cv-726, 2009 WL 8391641, at \*8 (V.I. Super. Ct. Dec. 17, 2009) (finding evidence sufficient to defeat summary judgment where, if true, it would show employer denied disabled employee part-time work and lied in telling him position had been filled).

The District Court found that Wilson had failed to present any evidence that WAPA engaged in conduct that amounted to fraud, deceit, or misrepresentation. It specifically stated that she had not shown that she was terminated because she was pregnant and found that she was instead terminated for failure to maintain her student status, a requirement of which she had been reminded before she was terminated. Once again, for the reasons stated above, we agree. Summary judgment on the duty of good faith and fair dealing claim was proper.

### d. Defamation

Wilson alleges that the District Court erred in granting summary judgment in favor of WAPA on her defamation claim. Her complaint alleges that WAPA's statements about her termination, particularly written and oral statements that she was not qualified for her job because she was not a full time student constitute per se slander, defamation, and libel. In her deposition, she specified that these were statements made in interoffice memoranda sent by Baumann and statements made to the VIDOL.

The tort of defamation has four elements under Virgin Islands law: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third

13

party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of 'special harm' or the existence of 'special harm' caused by the publication." *VECC, Inc. v. Bank of Nova Scotia*, 296 F. Supp. 2d 617, 622 (D.V.I. 2003) (citing Restatement (Second) of Torts § 558). Slander or defamation per se is shown by a "disparaging remark that tends to harm someone in his business or profession . . . irrespective of harm." *Illaraza v. Hovensa, L.L.C.*, Nos. 2008-cv-59 and 2007-cv-125, 2010 WL 3069482, at *4 (D.V.I. July 30, 2010).

The District Court correctly determined that the interoffice memoranda asking Wilson to verify her student status are not subject to a defamatory construction and that the statements to the VIDOL that her pregnancy had caused her to lose full-time student status and thus eligibility for her position did not reflect negatively upon her. Further, Wilson has demonstrated no special harm as a result of those statements. Accordingly, the District Court's grant of summary judgment was proper.

### e. Motion to Compel

Finally, Wilson asks for the opportunity, on remand, to re-open discovery for a brief period so that she can obtain a ruling on the merits of her motion to compel, which the District Court denied as untimely filed. Because we will not remand, we need not address this argument.

## IV. CONCLUSION

For the reasons set forth above, we will affirm the orders of the District Court.

14